## Burns Estate

*William R. Mark*, for administratrix.

*McCrea & McCrea*, for exceptant.

JACOBS, J., August 1, 1956.—Mary Elizabeth Burns died intestate on January 8, 1955. Shortly thereafter letters of administration on her estate were issued to a daughter, Mary A. Burns. Among the assets of the estate was a house situate at 111 South Earl Street, Shippensburg, Cumberland County. Administratrix, on August 29, 1955, privately sold the real estate at 111 South Earl Street, to her two sisters and a brother, namely, Margaret Etta Burns, John J. Burns and Sarah Virginia Burns. The purchasers paid $7,500 for the transfer, and administratrix agreed that she would pay the cost of attaching the house to the sewer and pay all realty transfer taxes imposed on said sale. Administratrix carried out her part of the bargain and

paid, from funds of the estate, transfer taxes amounting to $150 and the cost of installing the sewer amounting to $157. Administratrix filed her first and final account and statement of proposed distribution on October 18, 1955. Exceptions were filed to the account by Helen B. Sleighter, a daughter of decedent. This court appointed Robert M. Frey, Esq., as auditor to pass on the exceptions, and on March 26, 1956, Mr. Frey completed his report in which he dismissed the exceptions and placed the costs of the audit on exceptant. Mrs. Sleighter filed exceptions to this report which were argued before the auditor on April 17, 1956. The auditor later filed a supplemental report in which he dismissed these exceptions. Argument on the exceptions to the auditor's report was held before this court on June 19, 1956. Exceptions as filed object to the sale of 111 South Earl Street on the basis that an offer of $8,000 was outstanding for the property, to the charging of five percent commissions by administratrix on real estate sold, to the terms of the sale whereby administratrix agreed to connect the house to the sewer and pay the various transfer taxes and to the imposition of the costs of the audit on exceptant. We will treat the exceptions in the order listed.

Exceptant does not state what remedy she would like to have, but it is fairly obvious that only one remedy is available to her at this time, namely, to have administratrix surcharged for illegal expenditures.

### (A) The Sale of 111 South Earl Street

Under the Fiduciaries Act of April 18, 1949, P. L. 512, there can be no doubt as to the power of an administratrix to sell real estate. Section 541 of that act, 20 PS §320.541, gives that power in the following words: "Except as otherwise provided by the will, if any, the personal representative may sell, at public or private sale, any personal property whether spe-

cifically bequeathed or not, and any real property not specifically devised". If exceptant did not want the sale to be made she had her remedy under section 545 of the act, 20 PS §320.545, which provides that the court may restrain a personal representative from making any sale under an authority not given by will. This she did not do, but instead filed exceptions to the accounting of the proceeds of the sale. That portion of exceptant's argument bearing on the power of administratrix to sell, is irrelevant in the present proceeding.

The auditor has found as a fact that there was no $8,000 offer for the Earl Street property. After carefully reading the testimony this court is of the opinion that there was no firm offer which could have been accepted by administratrix in any amount in excess of $7,500. Apparently some statements were made by the purchasers about paying $8,000. Mr. Mark, attorney for the accountant, speaks of such an offer in his letter, which is exhibit no. 1 in the notes of testimony, and then says: "I have not drawn a deed for this property, and I am not sure whether the price will stick". This is not evidence of a firm offer. Exceptant says that all she knew about any offer to purchase was the statement contained in Mr. Mark's letter. Mrs. Zies, another daughter of decedent, claims she heard one of the purchasers say that they would give $8,000 for the place with the sewer. Mrs. Zeis says that on April 10, 1955, which was later, she heard the same purchaser say that they would give $7,500 without the sewer. Mrs. Zies further said that she knew in July that it was being sold for $7,500 with the sewer installed. Administratrix says that she never received a definite firm price of $8,000 for the property and that the $8,000 price was mentioned but it didn't stick. The purchasers deny that they ever made the $8,000 offer. The testimony fully supports the auditor's findings of fact in this regard. The findings of fact of an auditor

will not be disturbed unless they are unsupported by evidence: Harbaugh's Estate, 320 Pa. 209.

A fiduciary must exercise common care, prudence and caution in disposing of decedent's property: Seidman's Estate, 261 Pa. 540. "All that is required of executors is due diligence to get the best price which the market can give them": Earle's Estate, 30 D. & C. 692. "If an administrator sells at public sale, the burden is upon anyone who seeks to surcharge him with a loss; but in case he sells at private sale, which he has the legal right to do, the burden is on him to show that the prices obtained were the market values of the articles sold": Tyson's Estate, 80 Pa. Superior Ct. 29. If then administratrix can show that she used due diligence to acquire the fair market value of 111 South Earl Street, she cannot be surcharged.

Mrs. Bedford, a real estate agent, stated that she had the property for sale for some time and that she had advertised it for sale a good many times but had only gotten one offer for it. This offer was in the amount of $4,500 and was withdrawn.

Harvey E. Hoch, an experienced auctioneer, and Kenneth Hale, a real estate agent, testified that the fair market value of the same was $3,500. They pointed out that the railroad ran within 20 feet of the house, that the house needed repairs, that the cellar was not concreted and that the annual income from rent of the same was only $276. It is apparent from their testimony that they considered $7,500 far in excess of the fair market value of the property. This court is satisfied that administratrix has used due diligence in obtaining more than the fair market value of 111 South Earl Street.

*(B) Commissions Charged on the Sale of Real Estate*

Administratrix sold two pieces of real estate. 111 South Earl Street was sold for $7,500, and a tract of

land in Southampton Township was sold for $2,700. In her account administratrix claims commissions on those sales at the rate of five percent. For many years it has been customary to allow personal representatives commissions at the rate of five percent on personal property and three percent on converted real estate. The Fiduciaries Act of April 18, 1949, P. L. 512, made a radical change in the personal representative's duties toward real estate. By section 541, above quoted, the personal representative is given much greater power to sell real estate. In fact he can sell any real estate of his decedent unless he is prohibited by the will or the same is specifically devised. In addition, under section 501 of the act, 20 PS §320.501, the personal representative has the right to and shall take possession of, maintain and administer all the real and personal estate of decedent, except real estate occupied by an heir or devisee. Note that the personal representative is under a duty to take possession of, maintain and administer the real estate. Prior to this act he did not have these duties unless they were specifically given to him under the terms of the will. The two pieces of real estate involved in the Mary Elizabeth Burns Estate were ones over which administratrix had the duty of exercising control and maintenance. She performed her duties by collecting rents and later selling the real estate. In view of the Fiduciaries Act of 1949 we believe that as much work is now involved in administering real estate as is involved in administering personal property, and for that reason this court is of the opinion that administratrix is entitled to a commission of five percent on the real estate sold. See Smith Estate, 80 D. & C., 493.

### (C) Connecting to the Sewer and Paying Tranfer Taxes

This question is answered by an application of the cases cited under (A) above. The best market price

which administratrix could procure was $7,500 less the cost of connecting with the sewer and less the cost of both transfer taxes. Sarah J. Burns, one of the purchasers, stated emphatically: "I refused to buy it without the sewer line and the taxes paid on it". John J. Burns, another one of the purchasers, testified to the same effect. The third purchaser, Margaret Burns, stated that she felt she had paid too much for the property. In view of the fact that only one other offer was received for this property and that one in the amount of $4,500 was withdrawn, this court is of the opinion that administratrix was justified in making the bargain that she did. The net amount received by her from the sale of 111 South Earl Street was in excess of the fair market value. Rather than being subjected to objection over the amount she received she should be complimented on the good job she has done.

### (D) The Costs of Audit

The following pertinent statements appear in Grollman's Estate (No. 2) 273 Pa. 565. "Though costs of an audit are usually deducted from the fund for distribution, this is not an inflexible rule. . . . The orphans' court administers equity, and will consider all the circumstances presented in determining the question".

The auditor placed the costs on exceptant because he felt that the exceptions were not made in good faith but because of a personal feeling of distrust and dislike for the accountant. Therefore, he says, since exceptant was not able to justify the exceptions, she should pay the expenses of the audit.

This court feels that the true test is whether or not exceptant had probable cause for disputing the account. Unless she had probable cause, exceptant, being the losing party, should pay the costs: Dellinger Estate, 37 Dauph. 32.

The statutes and cases are clear on the powers of

personal representatives to sell real estate and their duties in regard to manner of sale and the price obtained. A search of the authorities by exceptant should have revealed the answer. If this were the only problem involved this court would be inclined to impose the costs on exceptant on the theory that it is our duty to discourage unnecessary litigation. However, the question of the accountant's commissions on real estate sold has not been conclusively answered by the courts. In addition, exceptant was probably justified in raising the sewer connection problem because of the general rule against an administratrix making permanent improvements to real estate. Exceptant did have probable cause for disputing the account, and the costs of audit, under the usual rule, should be deducted from the fund for distribution.

### (E) Schedule of Distribution

The balance in the hands of the accountant, to wit, $7,125.36, shall be distributed as follows:

| | |
|---|---:|
| To Costs of Audit . . . . . . . . . . . . . . . . . . . . $ | 175.60 |
| Helen B. Schleighter, 1/9th . . . . . . . . . . . | 772.19 |
| Mary A. Burns, 1/9th . . . . . . . . . . . . . . | 772.20 |
| George H. Burns, 1/9th . . . . . . . . . . . . . | 772.20 |
| Barbara B. Zies, 1/9th . . . . . . . . . . . . . . | 772.20 |
| Elizabeth B. Farner, 1/9th . . . . . . . . . . . | 772.20 |
| Sarah J. Burns, 1/9th . . . . . . . . . . . . . . | 772.19 |
| Margaret Etta Burns, 1/9th . . . . . . . . . . | 772.19 |
| John J. Burns, 1/9th . . . . . . . . . . . . . . . | 772.19 |
| Pearl Burns, 1/9th . . . . . . . . . . . . . . . | 772.20 |

$7,125.36

### Order

And now, August 1, 1956, at 1 p.m., exceptant's eighth exception is sustained and it is directed that the costs of audit be deducted from the fund for distribu-

tion and that distribution be made in accordance with this opinion. All other exceptions are dismissed and, except where inconsistent with this opinion, the auditor's report is confirmed absolutely.